## Illinois Central Traction Company et al., Appellants, v. Elias Mann, Administrator, Appellee.

1. EVIDENCE—*when absence of, cannot be urged on appeal.* The absence of evidence to support a particular allegation cannot be urged by an appellant who, by objection upon the trial, has prevented the introduction of such evidence.

2. MASTER AND SERVANT—*duty of former to furnish reasonably safe track.* It is the duty of a traction company to exercise reasonable care to provide a reasonably safe track upon which its cars are to be operated by its servants, and whether or not the company has failed in the performance of such a duty is a question of fact to be determined by the jury under the particular facts and circumstances in evidence.

3. MASTER AND SERVANT—*what risk not assumed.* *Held,* that the risk arising from the presence upon the tracks of weeds was not such a risk as a motorman, employed by the defendant company, assumed as a matter of law.

4. MASTER AND SERVANT—*what risks are assumed.* A servant assumes the risks ordinarily incident to his employment and the risk of such dangers as are obvious or which by the exercise of ordinary care he would have discovered. A servant may however have actual or constructive knowledge of a defect in an appliance with which, or in a place where is required to work, yet have no knowledge of a danger which may be incident to such defect.

5. MASTER AND SERVANT—*when doctrine of assumed risk available as defense to master.* A master can only be relieved from liability upon the ground that his servant assumed the risk, where the servant is chargeable with knowledge both of the defect and of the danger incident thereto.

Action on the case. Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the May term, 1907. Affirmed. Opinion filed April 21, 1908.

SHUTT, GRAHAM & GRAHAM, for appellants.

BROWN, WHEELER, BROWN & HAY and HAMILTON & CATRON, for appellees.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

This is an action on the case by appellee against appellants to recover damages for wrongfully causing the death of one Earl Buehler. A trial in the Circuit Court of Sangamon county resulted in a verdict and judgment against appellants for $2,500.

The declaration alleges that appellants were operating an electric railway upon which the cars were equipped with air brakes; that the deceased, Earl Buehler, was employed by appellants as a motorman upon a car running between Springfield and Virden; that it was the duty of appellants to provide a reasonably safe track and roadway upon which to operate said car, but that appellants neglected their duty in that behalf and permitted their track and roadway to become and remain overgrown and covered with a growth of grass and weeds to a height of one foot above the top of the rails; that when said grass and weeds became wet with dew or rain they weighted down upon the rails, which became so smooth and slippery that it was impossible to control the movement of cars so as to arrest the speed thereof by use of the air brake; that on August 18, 1905, the deceased was operating a car south of Virden and while he was making every reasonable effort to stop said car, and was in the exercise of reasonable care for his own safety, said car collided with another car on appellants' track, because of the slippery condition of the rails, etc.

From May 14, 1905, until August 17, 1905, the deceased was employed as a motorman by appellant, the Illinois Central Traction Company, operating a car between Springfield and Carlinville. During the time of his employment the deceased left Springfield for Carlinville every day at 3, 7 and 11 o'clock P. M. arriving at Carlinville two hours later, except upon the last trip, when he usually went only as far as Thayer, a station midway between Springfield and Carlinville,

where he met a northbound car, and there surrendering his southbound car to the motorman of the northbound car, who returned to Carlinville, he took the northbound car and returned to Springfield for the night. The movement of the cars was controlled by a dispatcher at Springfield, who communicated with the motorman by telephone. On arriving at the stopping place, a station or sub-station, the motorman left his car and announced his arrival to the dispatcher by telephone and received orders for the movement of the car.

On the night of August 17, 1905, the deceased, upon arriving at Thayer, the usual place of meeting of the northbound and southbound cars, communicated his arrival to the dispatcher and received an order to proceed to Virden Siding to meet the northbound car, which had been delayed. At Virden Siding there is a sub-switch at its south end with the main track. Southbound cars were entitled to the right of way and in the usual course of procedure it was the duty of the deceased, upon his arrival at Virden Siding, to stop his car on the main track, 100 to 200 feet north of the switch, and wait there until the northbound car had run into the switch. When the northbound car had run into the switch the two car crews would exchange cars, the southbound car would proceed forward on the main track, and after it had passed the switch point, the northbound car would move back on the switch track until it ran on the main track, and thence proceed north to Springfield.

The evidence does not disclose when the deceased applied the air brake to stop his car at Virden Siding, but Brock, the conductor of the car, who was upon the rear platform, testifies that he alighted from the car at a point on the main track about 200 feet south of the switch; that the car was then moving at a speed of about twelve miles an hour; that the wheels of the car were not revolving but were sliding upon the rails.

The car proceeded thus 100 feet further south, where it collided with the northbound car. The evidence shows that the headlight on the northbound car was burning and that from Virden Siding a northbound car could be plainly seen approaching for a distance of two or three miles. It is undisputed that the main track at Virden Siding was overgrown with grass and weeds, which covered the rails; that there was a heavy fall of dew on the night of the collision; and that when the wheels of the car passed over the rails the grass and weeds were crushed upon the rails.

The evidence further tends to show that the grass and weeds upon the track were of sufficient height to come in contact with the axles of passing cars, so that the lubricating oil or grease on the axles was communicated to the grass and weeds, which when crushed upon the rails of the track communicated such oil or grease to the surface of said rails.

The theory of appellants is that the deceased intended to take the switch at Virden Siding so as to compel the northbound car to remain on the main track and thus make it more convenient for him to return to Springfield on the northbound car; that he did not attempt to stop his car north of the switch point as he was required to do; and that he was thereby guilty of such contributory negligence as precludes a recovery. The difficulty with this theory is that it is almost purely speculative. It is only sustained by the supposition of the conductor that the deceased intended to enter the switch because the car had passed the switch point, and by the fact that the car did not stop north of the switch. The deceased must have observed the approach of the northbound car when he reached Virden Siding and in the absence of proof to the contrary, or the evidence of eye-witnesses, as to the conduct of the deceased, the jury were justified in taking into consideration the natural instincts prompting to the preservation of life and avoidance of danger. Furthermore, the evidence tends to show that even after it is admit-

ted that the wheels of the car were held by the brake and were sliding upon the rails, the car moved 100 feet south to the point of collision with the northbound car at a rate of speed sufficient by the force of the impact to knock the front truck from under the northbound car, to break the windows and crush the vestibule of that car, throwing its platform over the platform of the southbound car and to seriously damage the northbound car. Upon this state of the record the question as to whether or not the deceased was guilty of negligence contributing to his death was a question of fact for the jury and we are not prepared to say that the finding of the jury upon that issue was unwarranted.

It is urged on behalf of appellants that there is no evidence in the record tending to show that the presence of grass and weeds upon the rails of the track caused the same to become slippery so that the wheels of the car would necessarily slide upon the rails after the brake was applied, and, therefore, that there is no proof in the record that the conduct of appellants in permitting grass and weeds to grow upon the track was negligence, which negligence was the proximate cause of the death of appellee's intestate. Upon the trial appellee offered evidence for the purpose of showing the effect which would ordinarily be produced upon the rails of the track by the presence of grass and weeds thereon, but upon the objection of counsel for appellants such evidence was excluded. Appellants are not therefore in a position to urge the absence of evidence which but for their objection would have appeared in the record.

The weeds and grass which were growing upon the track are described by the witnesses as being "live and strong." When they were crushed upon the rails they necessarily exuded moisture, and this moisture together with their crushed pulpy fiber mingled with lubricating oil or grease upon the surface of the rails was evidently calculated to intensify the slipperiness

of the rails, and make it more difficult if not impossible properly to control the movement of a car by the use of the air brake. It was the duty of appellants to exercise reasonable care to provide a reasonably safe track upon which their cars were operated by their servants, and whether or not appellants failed in that duty under the circumstances disclosed by the record in this case was a question of fact for the jury.

It is insisted by appellants that the deceased assumed the risk incident to the operation of a car upon the track at the place in question because he must be held to have had actual knowledge of the condition of said track, and the presence of grass and weeds upon it at that place. A servant assumes the risk ordinarily incident to his employment and the risk of such dangers as are obvious or which by the exercise of ordinary care on his part he would have discovered. McCormick Machine Co. v. Zakzewski, 220 Ill. 526. A servant may, however, have actual or constructive knowledge of a defect in an appliance with which, or in a place where he is required to work, yet have no knowledge of a danger which may be incident to such defect.

A master can only be relieved from liability upon the ground that his servant assumed the risk, where the servant is chargeable with knowledge both of the defect and of the danger incident to such defect. Hartrich v. Hawes, 202 Ill. 334. Appellee's intestate must be held to have had actual knowledge of the presence of grass and weeds upon the track at Virden Siding, but it does not necessarily follow that he had knowledge, or by the exercise of reasonable care would have had knowledge of the fact that the wheels of cars operated upon the track at that place crushed the grass and weeds intermingled with oil or grass upon the face of the rails, causing the rails to become so slippery that the movement of cars thereon could not be controlled by use of the air brake. The track was entirely within the control of appellants and the de-

ceased owed no duty relating to its care and mainte-
nance. The car operated by the deceased usually met
the northbound car at Thayer and prior to the night
upon which the collision occurred deceased had not
had occasion to stop at Virden Siding, which it is con-
ceded was an unusual meeting place for the two cars.
Having no occasion to stop at Virden Siding it may
well be held that the deceased was not chargeable with
knowledge of the condition in the respects mentioned
of the track at that place, which condition made it im-
possible by the use of the ordinary means at his com-
mand to stop the car at the proper place. Whether or
not the deceased assumed the risk which resulted in
his death was submitted to the jury under proper
instructions, and we are not disposed to disturb their
finding upon that issue.

The first instruction given to the jury at the in-
stance of appellee states an abstract proposition of
law regarding the duty of a master to exercise reason-
able care to provide his servant with a reasonably safe
place to work. Being abstract in form the instruction
should have been refused or modified so as to make it
concretely applicable to the facts of the case, but taken
in connection with all of the other given instructions
we are of the opinion that it did not influence the jury
to the prejudice of appellants.

The judgment of the Circuit Court will be affirmed.

*Affirmed.*